UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE ESTATE OF MICHAEL HEISER, deceased,
et al.,

    Petitioners,   11-CV-1608 (PAC/MHD)

v.

DEUTSCHE BANK TRUST COMPANY   **PETITIONERS' OPPOSITION TO**
AMERICAS,   **MOTION TO STAY**

    Respondent.
-------------------------------------------------------------x

# PETITIONERS' OPPOSITION TO MOTION TO STAY

| | |
|---|---|
| Barbara L. Seniawski | Richard M. Kremen (admitted *pro hac vice*) |
| DLA PIPER LLP (US) | Dale K. Cathell (admitted *pro hac vice*) |
| 1251 Avenue of the Americas, 27th Floor | DLA PIPER LLP (US) |
| New York, New York  10020-1104 | 6225 Smith Ave. |
| Telephone:  212-335-4500 | Baltimore, MD 21209 |
| Facsimile:  212-335-4501 | Telephone:  410-580-3000 |
| barbara.seniawski@dlapiper.com | Facsimile:  410-580-3001 |
| | richard.kremen@dlapiper.com |
| | dale.cathell@dlapiper.com |

*Attorneys for the Petitioners the Estate of Michael Heiser, et al.*

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................................1

ARGUMENT ....................................................................................................................................3

    I. Background .......................................................................................................................3

    II. The Extraordinary Relief Requested by the Respondent Should be Denied ..................4

        A. Standard Governing Stay of Proceedings ..........................................................4

        B. The Balance of the Factors Weighs Heavily in Favor of the Heisers ...............6

            1. Duration of the Stay ................................................................................6

            2. Balance of Harm to the Parties ..............................................................7

            3. Promotion of Judicial Economy .............................................................8

            4. Other Pertinent Factors Specific to the Circumstances of the Case ........................................................................................................10

    III. Respondent Cannot Wait Indefinitely to Seek Interpleader Relief ...........................10

CONCLUSION ................................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*,
  Civ. No. 11-3283, 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011) ......................................... 2, 3

*Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*,
  713 F.2d 1477 (10th Cir. 1983) ..................................................................................... 4, 8, 9

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ................................................................................................ 8

*Hausler v. JPMorgan Chase Bank, N.A.*,
  740 F. Supp. 2d 525 (S.D.N.Y. 2011) ("*Hausler I*") ........................................................... 2, 7

*Hausler v. JPMorgan Chase Bank, N.A.*
  09 Civ. 10289, 2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) ("*Hausler II*") .................... passim

*Heiser v. Islamic Republic of Iran*,
  466 F. Supp. 2d 229 (D.D.C. 2006) ....................................................................................... 3

*Heiser v. Islamic Republic of Iran*,
  659 F. Supp. 2d 20 (D.D.C. 2009) ......................................................................................... 3

*Heiser v. Islamic Republic of Iran*,
  807 F. Supp. 2d 9 (D.D.C. 2011) ........................................................................................... 7

*In re Islamic Republic of Iran Terrorism Litig.*,
  659 F. Supp. 2d 31 (D.D.C. 2009) ....................................................................................... 10

*In re Literary Works in Elec. Databases Copyright Litig.*,
  No. M-21-90, 2001 WL 20422 (S.D.N.Y. Mar. 1, 2001) ....................................................... 5

*Klein v. Adams & Peck*,
  436 F.2d 337 (2d Cir. 1971) .................................................................................................. 4

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...................................................................................................... 4, 5, 8

*Levin v. Bank of New York,*
  09 Civ. 5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) ................................................. 2, 7

*Oretega Trujillo v. Conover & Co. Comm'n, Inc.*,
  221 F.3d 1262 (11th Cir. 2000) ............................................................................................. 5

*Peterson v. Islamic Republic Iran*,
    627 F.3d 1117 (9th Cir. 2010) .................................................................................................7

*The Youngbloods v. BMG Music*,
    Civ. No. 07-2394, 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) ...........................................passim

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................................................................................10

**STATUTES AND RULES**

28 U.S.C. § 1605A .........................................................................................................................1

28 U.S.C. § 1610(g) ............................................................................................................3, 7, 10

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002) ....................3

Fed. R. Civ. P. 14(a)(1) ................................................................................................................10

**OTHER**

H.R. Conf. Rep. 107-779 (2002), *reprinted in* 2002 U.S.C.C.A.N. 1430 .....................................10

# INTRODUCTION

The Petitioners, the Estate of Michael Heiser, *et al*. (collectively, the "Heisers") are the family members and the personal representatives of the estates of seventeen of the nineteen U.S. Air Force officers and airmen killed in the June 25, 1996 terrorist bombing of the Khobar Towers[1] in consolidated cases before the United States District Court for the District of Columbia captioned *Heiser v. Iran* (Case No. 00-CV-2329 RCL) and *Campbell v. Iran* (Case No. 01-CV-2104 RCL). The Heisers hold an unsatisfied judgment against the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and the Iranian Islamic Revolutionary Guard Corps (collectively, "Iran") pursuant to 28 U.S.C. § 1605A in the amount of $591,089,966.00, plus post-judgment interest (the "Judgment"). On March 8, 2011, the Heisers instituted this turnover action seeking, *inter alia*, an order compelling Deutsche Bank Trust Company Americas (the "Respondent") to turn over assets it holds in which Iran has an interest, including, but not limited to, certain electronic funds transfers ("EFTs") which have been blocked in accordance with the United States Department of Treasury Office of Foreign Assets Control's ("OFAC") sanctions regulations.

By its Motion, the Respondent seeks to further delay the efforts of the Heisers who have long-struggled to enforce their terrorism-related judgment against Iran. The Respondent asks this Court to indefinitely stay the Heisers' efforts to collect against Iranian assets held by the Respondent because of pending appeals in matters to which the Heisers are not a party. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, Appeal No. 12-0075 (2d Cir.) (the "*Calderon* Appeal"); *Hausler v. JPMorgan Chase Bank, N.A.*, Appeal No. 12-1272 (2d Cir.) (the

---

[1] Prior to their murders, the seventeen decedents were engaged in United Nations' peace time operations while stationed in Saudi Arabia.

"*Hausler* Appeal" and, collectively with the *Calderon* Appeal, the "Second Circuit Appeals"). The extraordinary relief sought by the Respondent is highly prejudicial to the Heisers and must be denied. It is impossible to guess when, if ever, the United States Court of Appeals for the Second Circuit will rule on the issues presented in these appeals. Numerous intervening factors can occur. For example, the appeal could be dismissed, settled, affirmed, or reversed on a narrow issue unrelated to the issues raised in the Motion. The indefinite delay is also damaging to the Heisers, who have struggled for over a decade to hold Iran accountable for its actions and collect upon their Judgment. The Respondent's role as a disinterested stakeholder in this matter is minimal, and it will suffer no prejudice by allowing the Heisers to proceed with their simple post-judgment turnover action.

Moreover, the Respondent's unsubstantiated and speculative assumptions regarding the disposition of the Calderon Appeal should be disregarded. The Respondent touts the district court's decision in *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, Civ. No. 11-3283, 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011). However, incredibly, the Respondent fails to inform this Court that the majority view in this District is directly opposite. *See Hausler v. JPMorgan Chase Bank, N.A.*, 09 Civ. 10289, 2012 WL 601034 (S.D.N.Y. Feb. 22, 2012) ("*Hausler II*"); *Levin v. Bank of New York*, 09 Civ. 5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011); *Hausler v. JPMorgan Chase Bank, N.A.*, 740 F. Supp. 2d 525 (S.D.N.Y. 2011) ("*Hausler I*").

Finally, the Heisers should not be prejudiced by further delay. The Respondent states its intent to interplead third-parties who may assert an interest in certain EFTs. The Respondent should not be permitted to continue these proceedings indefinitely, when it can otherwise expedite this process by seeking leave at this time to interplead these third-parties.

**ARGUMENT**

**I.     Background**

The Petitioners possess a judgment against Iran based upon, *inter alia*, Iran's role in the terrorist bombing of the Khobar Towers in Saudi Arabia that killed nineteen United States servicemen. *See Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20 (D.D.C. 2009). In an effort to enforce their Judgment, the Heisers registered the Judgment with this Court and delivered writs of execution to the United States Marshal who levied the writs on the Respondent. Thereafter, on March 8, 2011, the Heisers filed their *Petition for Turnover Order Pursuant to Fed. R. Civ. P. 69 and N.Y. C.P.L.R. §§ 5225 and 5227* (the "Petition"), as amended, seeking a turnover of Iranian assets held by the Respondent pursuant to, *inter alia*, 28 U.S.C. § 1610(g) and section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (2002), codified at 28 U.S.C. § 1610 note ("TRIA").

The Respondent is also a party to a separate matter involving efforts by judgment creditors of North Korea to collect upon their judgment. *See Calderon-Cardona v. Deutsche Bank Trust Company Americas*, case no. 11-03289, consolidated under case no. 11-03283 (S.D.N.Y.) (DLC). On December 7, 2011, the court entered summary judgment against the Calderon-Cardona plaintiffs holding that they were not entitled to execute upon certain blocked EFTs held by the Respondent (and other banks) because North Korea was no longer a "terrorist party" as required under TRIA. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, Civ. No. 11-3283, 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011). The court also held, in dictum, contrary to the majority view in this District, that blocked EFTs are not subject to execution under TRIA. *Id*.

On January 5, 2012, the *Calderon-Cardona* plaintiffs noticed their appeal. *See* Declaration of Barbara L. Seniawski in Support of Petitioners' Opposition to Motion to Stay (the "Seniawski Decl."), Ex. 1. More than five months later, on May 16, 2012, the Respondent filed the Motion.

## II.  The Extraordinary Relief Requested by the Respondent Should be Denied

### A.  Standard Governing Stay of Proceedings

District courts may, at their discretion, grant a stay of proceedings. *The Youngbloods v. BMG Music*, Civ. No. 07-2394, 2011 WL 43510, at *3 (S.D.N.Y. Jan. 6, 2011). However, in exercising this discretion, courts must balance the interests of the parties and should only grant a stay that would delay court proceedings by other litigants where a "suppliant for a stay . . . make[s] out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255-56 (1936); *see also Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).

Given the high level of proof required for a motion to stay, courts are reticent to grant such motions lightly. In *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936), the Supreme Court held that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* Furthermore, courts in this Circuit are held to the rule that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971).

Contrary to the Supreme Court's mandate in *Landis*, the Respondent requests that the Court indefinitely stay this proceeding while other parties litigate related issues in the Second Circuit Appeals. "A stay is immoderate and hence unlawful unless so framed in its inception

4

that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis v. N. Am. Co.*, 299 U.S. 248, 57 S.Ct. 163, 167 (1936); *see also Oretega Trujillo v. Conover & Co. Comm'n, Inc.*, 221 F.3d 1262 (11th Cir. 2000) ("In considering whether a stay is 'immoderate,' we examine both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay."); *see also Youngbloods*, 2011 WL 43510, at *3 (citing *Landis*, 299 U.S. at 254-57).

The Respondent urges the Court to apply the five (5) factors set forth in *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 20422 (S.D.N.Y. Mar. 1, 2001).[2] However, these factors "were originally formulated in order to determine a motion by defendants to stay numerous civil antitrust cases, pending the disposition of a parallel criminal antitrust case." *Youngbloods*, 2011 WL 43510, at *4. The *Youngbloods* court noted that the factors relied upon by the Respondent addressed concerns that the burdens of civil discovery or motion practice would seriously hamper preparations for the criminal proceeding and potentially intrude upon the Fifth Amendment rights of individuals. *Id.* In *Youngbloods*, the court considered the following four factors: (1) the duration of the requested stay; (2) the balance of harm to the parties; (3) the promotion of judicial economy; and (4) other pertinent factors specific to the circumstances of the case. 2011 WL 43510, at *4 (citing *Landis*, 299 U.S. at 256).

---

[2] These factors are: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burdens on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 20422, at *12.

### B.     The Balance of the Factors Weighs Heavily in Favor of the Heisers

#### 1.     *Duration of the Stay*

Courts are reticent to grant a stay where a movant fails to provide any "evidence about the duration of the requested stay," and "it is uncertain how long [the other litigation] will last and when it will be decided." *See Youngbloods*, 2011 WL 43510, at *8. Here, the Respondent seeks the extraordinary relief of staying the Heisers' post-judgment turnover proceeding pending resolution of an indefinite appeal in an unrelated matter to which the Heisers are not a party.

It is impossible to determine if and/or when the Second Circuit will issue a decision in the *Calderon* Appeal, the reason for the Respondent's request for a stay. The *Calderon* Appeal could settle, be dismissed, or be decided on more narrow issues not relevant to this proceeding. Respondent's speculation that the Second Circuit will "proceed swiftly" is unsupported by any evidence. *See Youngbloods*, 2011 WL 43510, at *8 (denying stay and finding duration of requested stay to be immoderate where the "defendant submitted no evidence to the Court to show, for example, what the general time range is for disposing of similar cases").[3]

The Respondent's unsupported assumptions regarding the disposition of the Second Circuit Appeals should be disregarded. Although the Respondent informs the Court of the briefing schedules, which extend over *at least* three months, the Respondent provides no evidence regarding when the Second Circuit may hear or ultimately rule on the issues presented, if at all. Furthermore, the Respondent fails to state in the Motion that the majority view in this Court, contrary to *Calderon-Cardona*, holds that TRIA preempts state property law and subjects blocked EFTs to execution under TRIA, thereby making the Respondent's apparent confidence

---

[3] The Respondent has provided the Court with information regarding the briefing schedule in the *Calderon* Appeal and *Hausler* Appeal. However, the Respondent provides no evidence regarding when the Second Circuit may ultimately rule on the issues presented and render its decisions.

that the Second Circuit will expeditiously and certainly affirm the *Calderon* Appeal unfounded. *See Hausler II*, 2012 WL 601034 (awarding turnover of blocked assets to judgment creditors of Cuba under TRIA over the objection of claims to the blocked assets asserted by parties to the EFTs); *Levin*, 2011 WL 812032 (awarding turnover of Iranian assets blocked pursuant to OFAC sanctions, including EFTs, to judgment creditors of Iran under TRIA and holding that "[t]he language of TRIA is broad, subjecting *any asset* to execution that is seized or frozen pursuant to the applicable sanctions schemes" (emphasis in original)); *Hausler I*, 740 F. Supp. 2d 525 (awarding turnover of EFTs under TRIA in which Cuba and its agencies and instrumentalities held an interest because the EFTs were blocked pursuant to OFAC regulations); *see also Peterson v. Islamic Republic Iran*, 627 F.3d 1117, 1123 n.2 (9th Cir. 2010) (noting that under 28 U.S.C. § 1610(g) judgment creditors can now reach any U.S. property in which Iran has any interest); *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 18 (D.D.C. 2011) (same).

Regardless of how the Second Circuit rules, the Respondent may further delay this matter by seeking yet another stay pending a petition by the parties to the Supreme Court. Accordingly, the relief requested by the Respondent is immoderate under the Supreme Court's decision in *Landis* and must be denied.

### 2. *Balance of Harm to the Parties*

The Heisers have a significant interest in proceeding expeditiously with this post-judgment turnover proceeding and they will be severely prejudiced if it is delayed. The Heisers have been fighting for over a decade to hold Iran accountable for its terrorist actions. Seniawski Decl. ¶ 3. Many of the family members and personal representatives of the victims' estates are

aging and several have passed away.  Seniawski Decl. ¶ 4.  Furthermore, this proceeding has been pending for more than fifteen (15) months.[4]

In contrast, the Respondent cannot demonstrate a clear hardship if required to go forward. *Landis*, 299 U.S. at 254 (requiring a "clear case of hardship" in being required to proceed).  The Respondent has repeatedly stated that it is a disinterested stakeholder of funds and already has disclosed the list of blocked assets it holds.  Discovery, if any, will be minimal and likely only will seek, *inter alia*, factual information and documents related to the underlying blocked wires.  Thus, the Respondent's role in this action is *de minimis*.  Moreover, the *Calderon* decision was rendered more than six months ago, on December 7, 2011, and the *Calderon* plaintiffs noticed their appeal on January 5, 2012.  The original briefing schedule in the *Calderon* Appeal has already been extended once.  Order, May 23, 2012, Case Nos. 12-1264, 12-1272, ECF No. 72.  The Respondent is also party to the *Calderon* Appeal and sat idly by for five months before filing the Motion.  If the Respondent was truly concerned about its perceived hardship, it would have immediately sought to stay this proceeding.  Thus, the Respondent's dilatory conduct refutes any alleged burden that it may face in proceeding with the Heisers' action.

### 3. *Promotion of Judicial Economy*

Judicial economy and case management standing alone are insufficient to stay proceedings.  *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *accord Commodities Futures Trading Comm. v. Chilcott Portfolio Mgmt., Inc.*,

---

[4] The Heisers have remained focused on proceeding expeditiously in this proceeding.  On September 13, 2011, the Heisers presented a proposed procedure to the Respondent for providing notice to third parties who may claim an interest in the Iranian assets it holds.  The Respondent, however, never agreed to these notice procedures that would have placed the burden of serving third parties with notice of this action on the Heisers, at their own cost.  *See* Seniawski Decl., Ex. 2.  The Respondent criticizes the Heisers for seeking two (2) brief continuances of status conferences scheduled in this matter.  The Respondent fails, however, to inform the Court that the Heisers requested these continuances to allow the parties an opportunity to try to reach agreement on the appropriate procedure for moving forward in these proceedings.

713 F.2d 1477, 1485 (10th Cir. 1983) ("[M]ere convenience of administration is an insufficient basis for staying a cause before another court."). Considerations of judicial economy "should rarely if ever lead to [] a broad curtailment of the access to the courts." *Commodities Futures Trading Comm.*, 713 F.2d at 1485. Here, judicial economy is not served by having this action sit idle on the Court's docket while the Second Circuit Appeals proceed. This Court has an interest in advancing cases on its own docket.

Furthermore, the Respondent argues that "if affirmed, [the *Calderon* Appeal] will likely dispose of this matter as well." *See Memorandum of Law in Support of Respondent's Motion to Stay*, May 16, 2012, Case No. 11-cv-1608, ECF No. 27 ("Respondent's Memo. of Law"). However, the *Youngbloods* court held that a party's "speculative assertions" concerning the outcome of a case is "not appropriate" grounds for granting a stay of proceedings, even if the movant suggests that such an outcome would render the case moot. *Youngbloods*, 07 CIV 2394 GBD KNF, 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011). The Respondent concedes, however, that "[i]t is, of course, possible that the Second Circuit will reverse Judge Cote's decision in *Calderon-Cardona*, in whole or in part, and adopt of the position of the court in *Hausler*." Respondent's Memo. of Law at 7. As discussed below in section III, the Respondent intends to seek interpleader relief from this Court to sue "all other third parties around the world who may have competing claims to the funds." Respondent's Memo. of Law at 8. The interpleader relief sought by the Respondent further demonstrates that a stay will only delay the ultimate resolution of this matter as the Heisers are forced to wait while the Respondent serves these third parties. *Id*. Interests of judicial economy will be frustrated by indefinitely delaying the interpleader process which the Respondent should seek leave of this Court to begin now.

### *4.    Other Pertinent Factors Specific to the Circumstances of the Case*

The United States, New York, and the public generally all have a significant interest in upholding the rights of terrorism victims and deterring future terrorist attacks. Congress remains focused on eliminating the barriers to execution that terrorism victims may face and ensuring that terrorism-related judgments are enforced. *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 62 (D.D.C. 2009); *see also Weininger v. Castro*, 462 F. Supp. 2d 457, 483 (S.D.N.Y. 2006) ("It is the intent of the Conferees that Section 201 [of TRIA] establish that such [terrorism-related] judgments are to be enforced.") (quoting H.R. Conf. Rep. 107-779, at 27 (2002), *reprinted in* 2002 U.S.C.C.A.N. 1430, at 1434-35). For example, 28 U.S.C. § 1610(g), one of the statutory grounds relied upon by the Heisers, advances Congress' express goal of "better promot[ing] and execut[ing] the federal interest in deterring terrorist attacks and compensating victims." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 79. The indefinite stay requested by the Respondent will frustrate Congress' stated goal and thwart the public support of justice for terrorism victims. *See Youngbloods*, 2011 WL 43510, at *8 (denying stay where the public interest would not be promoted).

### III.    Respondent Cannot Wait Indefinitely to Seek Interpleader Relief

In the Motion, the Respondent asserts that it intends to file an interpleader petition. As an initial matter, the Respondent must seek leave of Court to engage in third-party practice because its deadline to do so has long-passed. *See* Fed. R. Civ. P. 14(a)(1) ("[T]hird-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."). To the extent that the Court grants leave to the Respondent to engage in third-party practice, the Heisers should not have to wait an indefinite period of time for the Respondent to start the interpleader process. The Respondent should be forced to move

forward with bringing in those parties whom it believes may assert a claim now.  If the *Calderon* decision is reversed in favor of the majority view of this Court, then all parties will be before the Court and the Heisers will be able to promptly move for a turnover of the blocked assets.[5]  If the Respondent is permitted to stay these proceedings, the Heisers will be forced to wait until after the *Hausler* Appeal is affirmed for the Respondent to *start* the interpleader process.  Thus, a stay will act to prolong these proceedings and prejudice the Heisers.

## **CONCLUSION**

Based on the foregoing, the Heisers respectfully request that the Court deny the Motion.

Respectfully submitted,

Dated: New York, New York
       May 30, 2012

s/Barbara L. Seniawski
Barbara L. Seniawski
DLA PIPER LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
Telephone:  212-335-4500
Facsimile:  212-335-4501
barbara.seniawski@dlapiper.com

and

Richard M. Kremen (admitted *pro hac vice*)
Dale K. Cathell (admitted *pro hac vice*)
DLA PIPER LLP (US)
6225 Smith Ave.
Baltimore, MD 21209
Telephone:  410-580-3000
Facsimile:  410-580-3001
richard.kremen@dlapiper.com
dale.cathell@dlapiper.com

*Attorneys for the Petitioners*

---

[5] Moreover, in the event that the *Calderon* Appeal is affirmed on the narrow ground that North Korea is not a "terrorist party," judgment can promptly be entered against the *Calderon* plaintiffs.

11