```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: OCT 17 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESTATE OF MICHAEL HEISER, ET AL.,

                     Petitioners,

       -v-

DEUTSCHE BANK TRUST COMPANY AMERICAS,

                     Respondent.
------------------------------------------------------------X

11 Civ. 1608 (AJN) (MHD)

ORDER

ALISON J. NATHAN, District Judge:

    On July 7, 2012, Magistrate Judge Michael H. Dolinger issued a Memorandum and Order (the "Order") granting the motion of Respondent, Deutsche Bank Trust Company Americas ("DBTCA"), to stay this action pending the Second Circuit's resolution of two cases on consolidated appeal: *Calderon-Cardona v. JP Morgan Chase Bank, N.A.*, No. 11 Civ. 3283 (DLC), 2011 WL 6155987 (S.D.N.Y. Dec. 7, 2011), *appeal docketed*, No. 12-0075 (2d Cir. Jan. 5, 2012) and *Hausler v. JP Morgan Chase Bank, N.A.*, No. 09 Civ. 10289 (VM), 845 F. Supp. 2d 553 (S.D.N.Y. 2012), *appeal docketed*, No. 12-1272 (2d Cir. May 8, 2012). (Dkt. #33) Petitioners, the family members and personal representatives of seventeen U.S. Air Force officers and airmen killed in a 1996 bombing in Saudi Arabia, filed timely objections to the Order on July 24, 2012, (Dkt. #34), which the Court considers here. The facts and procedural history of this case are discussed in full in the Order. For the reasons that follow, Judge Dolinger's Order is AFFIRMED.

## I. LEGAL STANDARD

    A district court must consider timely objections to nondispositive pretrial orders of a magistrate judge and must "modify or set aside any part of the order that is clearly erroneous or

1

is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Such an order is "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Granite State Ins. Co. v. Clearwater Ins. Co.*, No. 09 Civ. 10607 RKE, 2012 WL 1520851, at *1 (S.D.N.Y. Apr. 30, 2012) (quoting *Catskill Dev. LLC v. Park Row Entn't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

An order is "clearly erroneous" when, "although there is evidence to support it, the court upon reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Granite State Ins. Co.*, 2012 WL 1520851, at *1; *see also Easley v. Cromartie,* 532 U.S. 234, 242 (2001). Indeed, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985), and the "reviewing court should affirm if 'any reasonable view of the record' supports the factfinder's conclusions," *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (quoting *Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1123 (2d Cir. 1993)). Accordingly, Magistrate Judges are "afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 90 (S.D.N.Y. 2002).

## II. DISCUSSION

Petitioners assert two general objections to the Order. First, that Judge Dolinger erred in applying the test articulated in *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) rather than the test articulated in *The Youngbloods v. BMG Music*, No. 07 Civ. 2394 (GBD) (KNF), 2011 WL 43510 (S.D.N.Y. Jan. 6, 2011). Second, that Judge Dolinger applied the *Kappel* test incorrectly. For the reasons that follow, the Court finds that Judge Dolinger properly

declined to apply the *Youngbloods* test, and that Judge Dolinger's application of the *Kappel* test was not clearly erroneous.

### A. Judge Dolinger Properly Declined to Apply the *Youngbloods* Test

As an initial matter, Petitioners object to the particular multi-factor test used by Judge Dolinger to determine the appropriateness of a stay in this case. Judge Dolinger applied the *Kappel* test, which indicates that the following factors be weighed in consideration of a stay: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Kappel*, 914 F. Supp. at 1058. Petitioners contend that the appropriate test is found not in *Kappel* but in *Youngbloods*, another case from this District. The *Youngbloods* court applied the following four-factor test: (1) the promotion of judicial economy; (2) the balance of harm to the parties; (3) the duration of the requested stay; and (4) other pertinent factors specific to the circumstances of this case. 2011 WL 43510, at *4.

The court in *Youngbloods*, acknowledging that the *Kappel* test is usually applied by courts in this District, chose instead to apply the four-factor test articulated above because the *Kappel* test was originally formulated in the context of evaluating a stay of civil litigation pending disposition of a parallel *criminal* case. *Id.* The court found that application of the four-factor test rather than the *Kappel* test was appropriate because "constitutional or certain other concerns implicated in criminal proceeding are generally not present where a motion to stay a civil action involves a concurrent federal *civil* action." *Id.* (emphasis added) Petitioners contend that because the same reasoning applies in the instant matter, Judge Dolinger erred in applying the *Kappel* test. (Pet'rs' Obj. 5, n.1) The Court is unpersuaded.

3

As Judge Dolinger noted, the *Kappel* test is widely applied in this District for determining whether or not to grant a stay pending an appeal. (Order 6-7) Although it originated in the context of a stay pending resolution of concurrent criminal matters, its application has not been limited to stays of this posture. *See Catskill Mountain v. EPA*, 630 F. Supp. 2d 295 (S.D.N.Y. 2009) (applying the *Kappel* factors in granting a stay in a civil matter pending the disposition of a related civil matter then on appeal to the Eleventh Circuit Court of Appeals); *Fried v. Lehman Bros. Real Estate Assocs. III*, No. 11 Civ. 4141(BSJ), 2012 WL 252139 (S.D.N.Y. Jan. 25, 2012) (granting defendant's motion to stay pending the resolution of plaintiff's appeal in a related civil action before the Second Circuit); *Tradewinds Airlines v. Soros*, No. 08 Civ. 5901(JFK), 2009 WL 435298 (S.D.N.Y. Feb. 23, 2009) (staying a civil case pending the disposition of a contested default judgment before the Superior Court of the State of North Carolina); *Tradewinds Airlines v. Soros*, Nos. 08 Civ. 5901(JFK), No. 10 Civ. 8175(JFK), 2011 WL 309636 (S.D.N.Y. Feb. 1, 2011) (granting motion to continue the stay previously granted pending post-litigation appeals in the North Carolina courts); *Finn v. Barney*, No. 08 Civ. 2975(LTS)(KNF), 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) (staying civil proceedings until determination of whether the plaintiff's claims would be brought as part of a related putative class action already pending before the court); *In re Literary Works in Elec. Databases Copyright Litig.*, No. M–21–90 GBD, MDL 1379, 00 CIV 6049, 00 CIV 7376, 00 CIV 9411, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001) (staying a civil copyright action pending the resolution of a related case before the Supreme Court of the United States because any holding would "significantly impact" the multidistrict litigation).

Indeed, Petitioners have not cited, nor has this Court found, any case expressly adopting or applying the *Youngbloods* test in lieu of the *Kappel* test. Given the widespread use of the

*Kappel* test by courts in this District, Judge Dolinger's decision to apply this test was neither contrary to law nor clearly erroneous.

Moreover, the *Youngbloods* test is substantially similar to the *Kappel* test. Indeed, Petitioners have not identified any substantive difference between the two tests in application here. The Court therefore also agrees with Judge Dolinger that "use of the *Youngbloods* test would not alter the outcome" of the Order. (Order 7, n.1).

## B. Magistrate Judge Dolinger's Findings and Conclusion Were Not Clearly Erroneous

The Court now turns to Petitioners' primary objection to the Order — that Judge Dolinger's application and balancing of the *Kappel* factors was clearly erroneous. For the reasons that follow, the Court concludes that Petitioners' objections to Judge Dolinger's application of each *Kappel* factor are insufficient to compel a finding of clear error. As such, Petitioners' objections are rejected, and the Order is affirmed in full.

### i. *The Private Interests of Petitioners in Proceeding Expeditiously with the Litigation as Balanced Against the Prejudice to Petitioners if Delayed*

The first factor to be considered in determining whether to grant a stay pending appeal is the private interests of Petitioners in proceeding expeditiously with the litigation as balanced against the prejudice to Petitioners if delayed. *Kappel*, 914 F. Supp. at 1058. Judge Dolinger found that Petitioners' claim of prejudice was not compelling for two reasons. First, given that the issues to be considered in the consolidated appeal "directly relate to Petitioners' claims here," a "decision on the availability of EFTs for attachment will obviously clarify whether petitioners have a legally viable basis for relief against DBTCA." (Order 9) Second, because the stay is limited to the Second Circuit's resolution of the consolidated appeals, the stay is thus neither indefinite nor immoderate. (*Id.* at 9-10) Petitioners object to both of these conclusions.

5

Petitioners contend that Judge Dolinger's first conclusion—that the Second Circuit Appeals will "obviously clarify" the legal issues in this matter —was clearly erroneous "because it is impossible to know whether or not the decision of the Second Circuit will resolve the issues in this matter" since "a number of scenarios could result that would have no impact on this matter." (Pet'rs' Obj. 7) This argument is unavailing.

Petitioners, relying on § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") and § 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"), seek the turnover of ten electronic fund transfers ("EFTs"), which were routed through DBTCA. (Order 2-3) However, courts in this District are split on the question of whether or not EFTs are attachable under these statutes, particularly in light of the fact that the Second Circuit has held they are not attachable under New York state law. (*Id.* at 4) Indeed, it is this split that the *Calderon-Cardona* and *Hausler* appeals are meant to resolve. (*Id.* at 4-5) Thus, Judge Dolinger correctly observed that these appeals present an issue that is potentially dispositive in the instant action. (*Id.* at 5)

Moreover, while it is conceivable that the Second Circuit could resolve the *Calderon-Cardona* appeal on narrow grounds not relevant here (*i.e.*, that North Korea is no longer a "terrorist party" as required by TRIA and therefore that its assets cannot be attached under that statute), Petitioners have not asserted that the *Hausler* appeal could be similarly resolved. (Pet'rs' Obj. 7-8)

Finally, even if the Second Circuit only resolved the *Calderon-Cardona* appeal and only did so on the aforementioned narrow grounds, such a resolution would nonetheless impact the instant litigation because, as Respondent notes, it would "dispos[e] of claims of competing claimants to some of the same property that Petitioners seek here." (Resp't's Resp. 9) (Dkt. #36)

For these reasons, Judge Dolinger's conclusion that "the issues to be considered in the consolidated appeal directly relate to Petitioners' claims" is not clearly erroneous. (Order 9)

Petitioners also assert that Judge Dolinger's analysis of this *Kappel* factor was clearly erroneous because it failed to recognize the immoderate and indefinite nature of the stay. (Pet'rs' Obj. 6-7) In support of this objection, Petitioners rely on *Landis v. North American Co.*, 299 U.S. 248 (1936), which rejected a stay that, by its own terms, could operate for years while the parallel case proceeded through three stages of litigation (*i.e.*, district court, court of appeals, Supreme Court). (*Id.*) *Landis* is therefore distinguishable from the instant stay, which is for the limited period of the Second Circuit's consideration of the consolidated appeals. (Order 15) Because the instant stay is framed by discernible and reasonable limits, Judge Dolinger correctly concluded that it is neither indefinite nor immoderate. *See Wing Shing Prods. (BVI) Ltd. v. Simatelex Mfg. Col., Ltd.*, No. 01 Civ 1044(RJH)(HBP), 2005 WL 912184, at *3 (S.D.N.Y. Apr. 19, 2005) (stay pending decision by the Federal Circuit was not indefinite).

For the forgoing reasons, the Court finds that Judge Dolinger did not clearly err in concluding that granting a stay in the instant case would not unduly prejudice Petitioners.

### ii. The Private Interests Of and Burden on Respondent

The second *Kappel* factor considered by the Court is the private interests of and burden on Respondent. *Kappel*, 914 F. Supp. at 1058. Petitioners assert that Judge Dolinger improperly applied this factor because he failed to find, and Respondent failed to demonstrate, any prejudice or burden associated with proceeding forward. (Pet'rs' Obj. 8) The Court disagrees. Judge Dolinger clearly stated that a stay "may effectively dispose of some or all of this proceeding" and "would potentially absolve DBTCA of the need to litigate a variety of issues . . . and thus avoid the need for unnecessary litigation." (Order 11)

7

Petitioners make the argument here that this conclusion was error because Judge Dolinger failed to consider Petitioners' proposed procedure for reducing the burden of proceeding with the litigation. (Pet'rs' Obj. 8) In a footnote to their Opposition to Respondent's Motion to Stay, Petitioners referenced a proposed procedure for providing notice to third parties who may claim an interest in the disputed assets. (Pet'rs' Opp'n 8-10, n.4) (Dkt. #29) Under this procedure, Petitioners would shoulder the burden and the expense of serving third parties with notice of this action. (*Id.*) Although the argument was not presented to Judge Dolinger, Petitioners now claim that this proposal eliminates any burden to Respondent in proceeding with this action. (Pet'rs' Obj. 9)

As an initial matter, the Court is not obligated to consider this particular objection because it was not clearly raised before Judge Dolinger. *See Jones v. Smith*, No. 09 Civ. 6497 (PAE)(GAY), 2012 WL 1592190, at *8 (S.D.N.Y. May 7, 2012); *La Torres v. Walker*, 216 F. Supp. 2d 157, 160 n.3 (S.D.N.Y. 2000).

However, even if this objection were properly before the Court, it is insufficient to undermine Judge Dolinger's conclusion that Respondent's interest in avoiding unnecessary litigation would be secured by a stay. Although Petitioners' proposed procedure would plausibly reduce Respondent's burden of serving notice on absent third parties, it is not at all evident that this would be the only type of litigation expense to which Respondent would be subject during the pendency of the consolidated appeals. Indeed, Respondent asserts that in order to protect itself against potential liability that might arise should parties not already before the Court claim an interest in the blocked assets, it will likely have to file an interpleader action.[1] (Resp't's Resp.

---

[1] While Petitioners contend that an interpleader action is unnecessary, the respondent banks in *Hausler* proceeded in this manner for the same reason now proffered by Respondent. *See Hausler*, 845 F. Supp. 2d at 559.

8

at 11) Respondent certainly has an interest in avoiding such litigation if it would be rendered moot by resolution of the consolidated appeals.

In sum, Judge Dolinger's conclusion that a stay would serve Respondent's interests by avoiding unnecessary litigation is not clearly erroneous.

### iii.  *The Interests of the Court*

The third *Kappel* factor is the "the interests of the court." *Kappel*, 914 F. Supp. at 1058. Although a court "is obligated to exercise its jurisdiction over cases before it, and to guide those cases toward as speedy and inexpensive a conclusion as is consistent with permitting claims to be heard fairly," *id.*, it has the discretion to grant a stay "when a similar action is pending in another court" and "where a higher court is close to settling an issue of law bearing on the action," *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 n.39 (S.D.N.Y. 2005). Applying this standard, Judge Dolinger concluded that it was in the court's best interest to stay this action pending the resolution of the consolidated appeal because "the Second Circuit will likely be ruling on legal issues potentially dispositive in this case" and because "[f]ailure to[grant the stay] could well lead to unnecessary litigation that is time-consuming for this court, as well as for any third parties that might be joined in this turnover proceeding." (Order 12)

Petitioners assert that Judge Dolinger's analysis regarding the interests of the court is clearly erroneous for two reasons. Petitioners first argue that Judge Dolinger's analysis is clearly erroneous because "it is impossible to know whether the Second Circuit will ultimately address the issues in this matter." (Pet'rs' Obj. 11) The Court rejects this argument for the reasons previously articulated *supra* p. 6.

Petitioners next contend that under Judge Dolinger's reasoning, stays would be "entered anytime the Second Circuit is close to ruling on an important issue in any area of law . . .

[creating] a logjam on the Court's dockets and effectively halt the efficient administration of justice in the courts." (*Id.*) This is a broad overstatement that fails to take into account the very five-factor analysis employed both by Judge Dolinger and by this Court, which serves to limit the circumstances under which a stay is entered.

Moreover, Judge Dolinger's conclusion that a stay is in the best interest of the court is supported by the finding that failure to grant a stay could lead to unnecessary and time-consuming litigation. Although this is but one factor, maintaining an efficient docket falls within "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis*, 299 U.S. at 254).

For these reasons, the Court finds that Judge Dolinger's analysis of the interests of the court is not clearly erroneous.

### iv.  *The Interests of Persons Not Parties to the Civil Litigation*

The Court next considers the fourth *Kappel* factor—"the interests of persons not parties to the civil litigation." *Kappel*, 914 F. Supp. at 1058. Judge Dolinger concluded that the interests of non-parties weighed in favor of granting a stay because the Second Circuit, in disposing of the consolidated appeals, will likely rule on legal issues potentially dispositive in this case. (Order 12) Accordingly, failure to grant a stay "could well lead to unnecessary litigation that is time consuming . . . for any third parties that might be joined in this turnover proceeding." (*Id.*)

Petitioners contend that Judge Dolinger reached this conclusion in error because he failed to recognize that advancing this litigation would allow non-parties to assert claims to the funds at issue and thus "bring closure to those parties." (Pet'rs' Obj. 11) Respondent counters that the interests of non-parties are in fact served by the stay because resolution of the consolidated

10

appeal will "streamline and facilitate the adjudication of third party claims to the blocked EFTs" by clarifying the applicable law and by "addressing the competing claims of the *Calderon-Cardona* plaintiffs to the largest blocked wire here at issue, and potentially dispose of Petitioners' claims in the process." (Resp't's Resp. 13-14)

The Court agrees with Respondent. To the extent the Second Circuit clarifies the governing law, third party claimants will be able to make more informed determinations about the merits of their individual claims. As a result, the stay will spare third parties the expense and time of joining or being joined in the present matter with claims that the consolidated appeals could render meritless. Contrary to Petitioners' assertion, the fact that third parties with meritless claims can later be dismissed from the action does not undermine the conclusion that the third parties are better served by having clarification of the law prior to joining or being joined to this action.

In sum, Judge Dolinger's finding that the interests of third parties are served by the stay is not clearly erroneous.

### v.   *The Public Interest*

The final *Kappel* factor is the public interest. *Kappel*, 914 F. Supp. at 1058. Petitioners do not object to Judge Dolinger's analysis of this factor. Consequently, the Court accepts Judge Dolinger's analysis and conclusion without further review. *See Forsberg v. Always Consulting, Inc.*, No. 06-CV-13488 (CS), 2008 WL 5449003, at *4 (S.D.N.Y. Dec. 31, 2008) ("[A] party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point.").

### III. CONCLUSION

For forgoing reasons, Magistrate Judge Dolinger's Memorandum & Order granting Respondent's motion for a stay pending appeal is neither clearly erroneous nor contrary to law and is AFFIRMED.

Dated: October 17, 2012
      New York, New York

_____
ALISON J. NATHAN
UNITED STATES DISTRICT JUDGE